### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

CHARLES BERNARD FORD III,                *

Plaintiff,                                               *

v.                                                           *          Civil Action No. ELH-22-896

OFFICER TAYLOR, *et al.*,                   *

Defendants.                                          *
                                                              ***

### MEMORANDUM OPINION

The self-represented plaintiff, Charles Bernard Ford III,[1] was incarcerated at Dorsey Run Correctional Facility ("DRCF") in Jessup, Maryland.  He filed suit under 42 U.S.C. § 1983 against DRCF Warden Margaret Chippendale, correctional officers Adesoji Taylor and Emmanuel Nwonyugbo, and Sergeant Patrick Okafor. ECF 1.[2]  Ford also filed supplements to his Complaint (ECF 4; ECF 8) as well as exhibits.  ECF 1-2; ECF 8-1.[3]  In the Complaint, as supplemented, Ford alleges that defendants violated his Eighth Amendment rights because they were "careless and unprofessional" in failing to protect him from COVID-19, and they denied him a face mask, food because he had no mask, and access to prison services.  ECF 1; ECF 8.  He seeks monetary damages.  ECF 1 at 4; ECF 8 at 3.[4]

---

[1] Plaintiff's submissions do not include a comma between his last name and Roman Numeral III.

[2] The Clerk will be directed to amend the docket to reflect defendants' full and correct names.

[3] Ford also named the "Maryland Department of Corrections" ("DOC") as a defendant. ECF 1.  By Order of April 27, 2022 (ECF 2), I dismissed the suit as to the DOC.

[4] All citations reflect their electronic pagination.

Defendants have moved to dismiss the complaint for failure to state a claim.  ECF 25.  Their motion is supported by a memorandum of law (ECF 25-1) (collectively, the "Motion").  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Ford of his right to respond and that the failure to file a response in opposition to the Motion could result in dismissal of his suit.  ECF 26.  Ford responded, and defendants replied.  ECF 37, ECF 38.

The matter is now ripe for disposition.  Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2021).  Defendants' Motion shall be granted.

## I.       Factual Background

Ford's claims arise from three incidents.  *See* ECF 1 at 2-4; Supplement, ECF 8.  First, Ford alleges that on January 17, 2022, Officer Taylor conducted the inmate count without a face mask, and he refused to wear one when he was asked to do so.  ECF 1 at 2.  At that time, Ford's housing unit was "experiencing back to back COVID cases with no full housing testing to separate the healthy from the sick."  *Id.* at 3.

Plaintiff submitted a Request for Administrative Remedy ("ARP") regarding this incident.  *See id.* at 2.  Following an investigation, the Warden found Ford's AFP meritorious and noted that "the institution is taking corrective action" but no monetary compensation would be granted.  ARP Response, ECF 1-2 at 6.

Second, Ford claims that during the distribution of dinner meals on January 11, 2022, he used a sweater to cover his mouth and nose, because he had no mask.  ECF 1 at 3.  He asked Officer Nwonyugbo for a face mask, but his request was denied.  *Id.*  Subsequently, Ford approached the dinner line, where Sgt. Okafor refused to give him food, stating, "Oh well.  No

mask. No meal." *Id.* at 4. Ford submitted an ARP regarding this incident, which the Warden dismissed, finding that there was no evidence to support Ford's claim. *Id.*; ECF 1-2 at 1.

Ford's third claim is that on February 15, 2022, Warden Chippendale directed the placement of an Information Bulletin throughout the prison, which stated that unvaccinated inmates would not be permitted to participate in activities and services such as work release, home detention, educational programs, substance use disorder services, religious services, and mental health services. ECF 8 at 1-2. Ford submitted a copy of the Information Bulletin, which reflects that it was sent by Department of Public Safety and Correctional Services Deputy Secretary Wayne Hill. Informational Bulletin, ECF 8-1 at 1-2.

Ford submitted an ARP regarding this incident, which the Warden dismissed as moot on April 29, 2022, because a subsequent Information Bulletin stated: "No staff or inmate vaccination requirement will be mandated as eligibility for participation in any programming or volunteer service." *Id.* at 3. Thereafter, Ford appealed to the Commissioner of Correction, who dismissed the appeal, reiterating that on March 15, 2022, a second Information Bulletin "was disseminated which allowed non vaccinated offenders participation" in prison programming. *Id.* at 8.

## II.     Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the

complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of*

5

*the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his

claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Vol. Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Because Ford is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v.*

*Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.   Discussion

In their Motion, defendants contend that: (1) Ford fails to state a valid Eighth Amendment claim because he has not shown serious deprivation of a basic human need, deliberate indifference, or a significant injury; (2) there was no personal involvement by Warden Chippendale; and (3) defendants are entitled to qualified immunity.  ECF 25-1.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S.

823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King*, 825 F.3d at 218. Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

Moreover, the protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *cf. DeShaney v. Winnebago Cnty. Dep't of*

*Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338 (4th Cir. 2021) (same).  But, the Fourth Circuit has observed that "not all Eighth Amendment violations are the same:  some constitute 'deliberate indifference,' while others constitute 'excessive force.'"  *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. at 319-20).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.  The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety."  *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Ford's allegations regarding Officer Taylor's failure to wear a mask, Officer Nwonyugbo's denial of Ford's request for a mask, Sgt. Okafor's denial of food, and Warden Chippendale's suspension of prison services for unvaccinated inmates raise either conditions of confinement claims or an allegation that defendants failed to protect Ford from harm.  Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However, conditions that are merely

restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

In order to plead cruel and unusual punishment in regard to conditions of confinement, a prisoner must allege two elements:  that "the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted) (emphasis in original). Similarly, to allege a failure to protect claim, a prisoner must assert: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer,* 511 U.S. at 834).

To assert a claim involving a culpable state of mind, the plaintiff must allege facts that, if proven, amount to deliberate indifference, *i.e.*, facts that pertain to the conduct of a defendant that would amount to the deliberate disregard of an excessive risk of harm to the inmate's health or safety.  *See Wilson*, 501 U.S. at 302-03 (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson*, 878 F.3d at 107.  "'[T]he test is whether the guards know that the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'"  *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).  Thus, plaintiff must allege facts that, if proven, would lead a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk.  *See Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38).

Ultimately, the objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the

challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

In assessing Ford's claims, it is important to understand the context. The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020).[5] The nation was thrust into "the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). The events of which Ford complains date to early 2022, almost two years after the pandemic was declared.

In the context of the COVID-19 pandemic, courts have found that a plaintiff "must provide more than generalized allegations that the [defendants] ha[ve] not done enough to control the spread" of COVID-19. *Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021); *see also Hope v. Warden*, 972 F.3d 310, 330 (3rd Cir. 2020) (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate their risk of exposure in order to comply with constitutional mandates). In *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June 29,

---

[5] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201. Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 5, 2023).

2020) the United States District Court for the Western District of Michigan found that an inmate's "speculation about the mere possibility that he will become infected by the virus does not rise to the level of an Eighth Amendment violation."

Ford's allegation that Officer Taylor's failure to wear a mask could have exposed him to the COVID-19 virus does not rise to a constitutional violation.  Indeed, Ford does not claim that he became infected or was otherwise injured as a result of Officer Taylor's action or inaction. Thus, he fails to state an Eighth Amendment claim.  And, to the extent that Ford argues that Officer Taylor failed to follow prison policy, such a violation alone does not state a Fourteenth Amendment due process claim.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015).

Similarly, Ford does not state that Officer Nwonyugbo's failure to provide him with a mask or Sgt. Okafor's subsequent denial of a meal caused him any serious physical or emotional injury. As such, Ford fails to allege a substantial risk of harm necessary to establish an Eighth Amendment claim.

As to Warden Chippendale, Ford does not attribute any specific action or inaction to him that resulted in a constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation).  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983).  Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed

to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To state a claim of supervisory liability under § 1983, a plaintiff must allege facts that, if proven, would establish: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Ford has failed to plead facts that, if true, would show supervisory indifference to, or tacit authorization of, any misconduct by Warden Chippendale's staff. As discussed above, Ford failed to show that his constitutional rights were violated. Accordingly, he has necessarily failed to demonstrate that Warden Chippendale authorized or was indifferent to any such violation. Nor do Ford's assertions demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse.").

To the extent that Ford alleges that Warden Chippendale violated Ford's rights by suspending prison programs, his claim fails. It is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison rather than another,

absent a showing of significant hardship.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978).  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Accordingly, the Complaint must be dismissed.[6]

## IV.    Conclusion

For the foregoing reasons, I shall grant defendants' Motion to Dismiss.  The Complaint is dismissed for failure to state a claim.

An Order follows.


June 7, 2023                                                        /s/
Date                                                       Ellen L. Hollander
                                                          United States District Judge

---

[6] In light of the disposition, it is not necessary to address defendants' remaining arguments.

15